J-S11033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
NATHANIEL J. McINTYRE, :
:
Appellant : No. 1322 EDA 2014

Appeal from the Judgment of Sentence February 11, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0013097-2012

BEFORE: FORD ELLIOTT, P.J.E., OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED March 24, 2016**

Nathaniel J. McIntyre ("McIntyre") appeals from the judgment of
sentence imposed after he was convicted of criminal conspiracy (murder),
recklessly endangering another person, and possession of an instrument of
crime.[1] We affirm.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the facts
underlying this appeal, which arises out of McIntyre's participation in an
attempted robbery that resulted in the shooting of Tevin Adams ("Mr.
Adams"). **See** Trial Court Opinion, 3/3/15, at 1-4. We adopt the trial
court's recitation herein by reference. **See id.**

After McIntyre was apprehended, the Commonwealth charged him
with the above-mentioned offenses, as well as attempted murder,
aggravated assault, simple assault, and violations of the Uniform Firearms

---

[1] **See** 18 Pa.C.S.A. §§ 903, 2705, 907.

Act (collectively referred to as "the remaining offenses"). The matter proceeded to a non-jury trial, at the close of which the trial court found McIntyre guilty of the above-mentioned offenses, and not guilty of the remaining offenses. On February 11, 2014, the trial court imposed an aggregate sentence of 8½ to 17 years in prison, followed by five years of probation. McIntyre then filed a Motion for reconsideration of sentence, which the trial court denied. McIntyre thereafter timely filed a Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal.

On appeal, McIntyre presents the following question for our review: "Was the evidence insufficient to sustain the verdict of [guilt concerning] conspiracy to commit attempted murder?"[2] Brief for Appellant at 3 (capitalization omitted).

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test,

---

[2] We observe that McIntyre was convicted of conspiracy to commit murder, not conspiracy to commit *attempted* murder, as no such crime exists. **See, e.g., Commonwealth v. Kelly**, 78 A.3d 1136, 1145 (Pa. Super. 2013) (stating that "[t]he [trial] court plainly misspoke when it stated that [a]ppellant could be guilty of conspiracy to commit attempted murder, since the crime is actually conspiracy to commit murder."); **see also** 18 Pa.C.S.A. § 906 (providing that a person may not be convicted of more than one of the inchoate crimes).

we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. … Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

"To establish conspiracy to commit murder, the Commonwealth must show that the defendant, *with the specific intent to kill*, agreed with one or more persons to commit murder, or agreed to attempt to commit murder, or solicited someone to commit such crime or agreed to aid in the commission, attempt, or solicitation of such crime, and committed an overt act towards the commission of the murder." *Commonwealth v. Stokes*, 38 A.3d 846, 855 (Pa. Super. 2011) (emphasis added) (citing 18 Pa.C.S.A. §§ 903, 2502(a)). "Given the surreptitious nature of conspiracy, the existence of a [conspiratorial] agreement is often proven circumstantially, such as by the relations, conduct or circumstances of the parties or overt acts on the part of co-conspirators." *Commonwealth v. Jacobs*, 39 A.3d 977, 985 (Pa. 2012) (citation and quotation marks omitted). "Even if [a] conspirator did not act as a principal in committing the underlying crime, he is still criminally liable

for the actions of his co-conspirators in furtherance of the conspiracy." ***Commonwealth v. Knox***, 50 A.3d 749, 755 (Pa. Super. 2012) (citation omitted).

McIntyre argues that the Commonwealth failed to prove that he had the requisite intent for a conviction of conspiracy to commit murder, since "the facts elicited at trial did not show a shared specific intent to kill between [McIntyre] and his co-conspirators." Brief for Appellant at 8; ***see also id.*** (asserting that "[i]t was [McIntyre's] co-conspirator Samuel Wallace who shot [Mr. Adams,] and it was [McIntyre's] co-conspirator Corey Thompson who had the shotgun."). McIntyre additionally contends that evidence of a specific intent to kill was lacking because Mr. Adams purportedly "was shot in a non-vital part of his anatomy, from which injuries he was no longer suffering[.]" ***Id.*** at 12.

"Th[e Pennsylvania Supreme] Court has held repeatedly that the use of a deadly weapon on a vital part of a human body is sufficient to establish the specific intent to kill. Additionally, the Commonwealth can prove the specific intent to kill from circumstantial evidence." ***Commonwealth v. Simpson***, 754 A.2d 1264, 1269 (Pa. 2000) (citations omitted); ***see also Commonwealth v. Hall***, 701 A.2d 190, 196 (Pa. 1997) (stating that "[s]pecific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another."). Our Supreme Court has held that "[t]he firing of a bullet in the general area in which vital organs are

- 4 -

located can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt." ***Commonwealth v. Padgett***, 348 A.2d 87, 88 (Pa. 1975).

In its Opinion, the trial court addressed McIntyre's claim and determined that the evidence was sufficient to support his conspiracy conviction, and to establish specific intent to kill. ***See*** Trial Court Opinion, 3/3/15, at 5-7. We agree with the trial court's analysis and conclusion, which is supported by the record and the law, and affirm on this basis with regard to McIntyre's sole issue on appeal. ***See id.***; ***see also Padgett***, 348 A.2d at 88 (holding that "we are not persuaded that it must be shown that the bullet fired from a revolver, a deadly weapon, initially entered a vital organ before the inference of specific intent to kill can arise."); ***Commonwealth v. Wyche***, 467 A.2d 636, 637 (Pa. Super. 1983) (citing ***Padgett***, and holding that "although the fatal [bullet] slug entered the victim through the buttock, the jury could properly infer the specific intent to kill from these circumstances."); ***Commonwealth v. Cross***, 331 A.2d 813, 814-15 (Pa. Super. 1974) (finding specific intent to kill was established where the defendant discharged a firearm at the victim's vehicle, though the victim was not injured).

Judgment of sentence affirmed.

J-S11033-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2016

# FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

v.

NATHANIEL McINTYRE

 CP-51-CR-0013097-2012

MAR - 3 2015

Criminal Appeals Unit
First Judicial District of PA       1322 EDA 2014

## OPINION

Coleman, R.        CP-51-CR-0013097-2012 Comm. v. McIntyre, Natahniel J.
Opinion        **March 3, 2015**

7264679061

## I.    PROCEDURAL HISTORY

Following a waiver trial before the Honorable Robert P. Coleman on November 14, 2013, Appellant/Defendant, Nathaniel McIntyre, was found guilty of Criminal Conspiracy, Recklessly Endangering Another Person and Possession of an Instrument of Crime. He was sentenced to a total sentence eight and a half to seventeen years incarceration followed by five years of reporting probation.

## II.   ISSUES PRESENTED BY APPELLANT

In his 1925(b) statement, Appellant alleges that;
- The evidence was insufficient to sustain the verdict of Conspiracy to Commit Attempted Murder.
- The learned Trial Court abused its discretion in sentencing the Defendant.

## III.  FACTS

At a waiver trial before this court, the Commonwealth presented testimony from Cory Thompson, Tevin Adams, Philadelphia Police Officer Joseph Weike, and Philadelphia Police Detective Andrew Danks. The defense presented testimony from Ms. Brenda Clyburn.

On January 9, 2012, at approximately 10:00 p.m., Cory Thompson was waiting for a bus at Loretta and Magee Streets in the City and County of Philadelphia. Appellant, Nathanial McIntyre, and another man, Samuel Wallace, pulled up to Mr. Thompson in a red Dodge Caravan. (Notes of Testimony from 11/14/13 (hereinafter N.T.) at 8) Mr. Thompson had grown

1

up in the same neighborhood as the two men and was friends with them. The men offered to give Mr. Thompson a ride to the Margaret and Orthodox El station, and he accepted. Appellant was driving the van while Mr. Thompson rode in the passenger seat and Mr. Wallace in the back seat. (N.T. at 9) While driving, the two other men told Mr. Thompson, "you know what we're getting into tonight." and each man showed him a gun. (N.T. at 11) Mr. Wallace had a .38 caliber handgun and Appellant had a shotgun. (N.T. at 13) Mr. Thompson also stated that he saw a duffle bag in the car containing various items, including sneakers, cell phones, and a laptop. (N.T. at 12) As the men were driving on Levick Street, Appellant stopped the van and Mr. Wallace exited the vehicle and approached an unknown male on the sidewalk. Mr. Wallace pulled a gun on the individual and took a cell phone and an unknown quantity of cash from the man. (N.T. at 15-16) Mr. Wallace then reentered the vehicle and the group continued toward the El station. (N.T. at 18)

As the men continued driving, Mr. Wallace said, "We got another one." (N.T. at 19) Appellant stopped the van and Mr. Wallace exited the vehicle. As soon as Mr. Wallace exited, the individual on the street, later identified as Tevin Adams, began to flee on foot. Mr. Wallace fired his handgun five times in the direction of Mr. Adams. According to Mr. Thompson, Appellant could not exit the driver side door and crawled over Mr. Thompson to exit through the passenger side. Once outside the vehicle, Appellant fired the shotgun one time in the direction of Mr. Adams. (N.T. at 20-21) Mr. Thompson testified that he then exited the vehicle and attempted to flee the area by running down Orthodox Street. Mr. Thompson was arrested and did not see the two other men again until afterwards. Mr. Thompson testified that he had open cases that he had not been sentenced on and hoped that the judge would consider his cooperation in fashioning

2

a sentence, but that the District Attorney's Office had not promised him anything in exchange for his testimony. (N.T. at 24)

Tevin Adams was walking home on Margaret Street from the Margaret and Orthodox El station at the time of the incident. (N.T. at 60) As he was walking, a burgundy minivan pulled over next to him, with the passenger side towards Mr. Adams. The passenger asked Mr. Adams for "weed" and Mr. Adams pretended not to hear him. The passenger then asked again and Mr. Adams kept walking. (N.T. at 62) A man got out of the front passenger seat and pointed a shotgun at Mr. Adams' face and told him not to move. (N.T. at 63) Mr. Adams started to run away and saw another man exit the back seat of the vehicle with a handgun. Mr. Adams heard one shot from the shotgun and five shots from the handgun (N.T. at 65)

Philadelphia Police Officers Joseph Weike and Lee Newman were on duty on January 9, 2012. The Officers were a block away from the scene of the incident when they heard gunshots and responded to the area of 1600 Margaret Street. (N.T. at 84-85) Officer Weike saw a burgundy Dodge Caravan approaching their cruiser and blocked its route. Numerous males exited the van and began running. Officer Newman exited the cruiser and gave flash information of a man with a shotgun. Officer Weike exited the cruiser and gave chase to whom he thought was the man that had been seen with the shotgun. (N.T. at 85) Officer Weike gave pursuit for eight blocks and eventually caught and arrested the individual, later identified as Cory Thompson. Officer Newman secured the shotgun that had been dropped near the vehicles. Officer Newman also recovered a revolver from the center console of the van. (N.T. at 86) The revolver contained six spent shell casings and the shotgun contained one spent shell casing. (N.T. at 88) The Dodge Caravan came back as stolen and was impounded. (N.T. at 89) Inside the van,

3

police found a duffle bag containing sneakers and clothes and a backpack containing some paperwork. (N.T. at 96)

Following the incident, Mr. Adams returned home and did not notice that he had been shot until he attempted to use the bathroom at around 3:00 a.m., at which point he noticed a hole in his buttocks and an exit wound in his groin. (N.T. at 66-67) Mr. Adams awoke again at 7:00 a.m. and was in pain, casing his mother to alert the police and an ambulance. Mr. Adams was transported to Hahnemann Hospital where he was taken into surgery and where he remained for two weeks while recuperating. (N.T. at 68) While in the hospital, Mr. Adams was visited by Detective Andrew Danks of the Philadelphia Police Department. (N.T. at 96) Mr. Adams was shown several photo arrays and asked if he recognized any of his attackers. In a photo array containing a picture of Cory Thompson, Mr. Adams did not identify anyone. In a second photo array, Mr. Adams identified Appellant as the front seat passenger who had fired the shotgun at the scene. (N.T. at 98) In a third photo array, Mr. Adams identified Samuel Wallace as the back seat passenger with the handgun. (N.T. at 99) At trial, Mr. Adams did not identify anyone as his attacker and stated that he was not sure about his prior identification. (N.T. at 82)

Appellant's grandmother, Brenda Clyburn, testified that at the time of the incident, Appellant owned a Lincoln Continental. (N.T. at 109)

## IV. LEGAL ANALYSIS

- **Sufficiency of Evidence**

In considering a challenge to the sufficiency of the evidence, the Court must decide whether the evidence adduced at trial, viewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, could enable the fact-finder to find every

4

element of the crimes charged beyond a reasonable doubt.[1] In making this assessment, a reviewing court may not weigh the evidence and substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence.[2] "[A] mere conflict in the testimony of the witnesses does not render the evidence insufficient."[3] The Commonwealth may satisfy its burden of proof entirely by circumstantial evidence, and "if the record contains support for the verdict, it may not be disturbed."[4] The facts and circumstances need not preclude every possibility of innocence. The fact finder may resolve any doubts concerning the defendant's guilt, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.[5]

Appellant's 1925(b) statement misstates what he was found guilty of. Appellant was not found guilty of "conspiracy to commit attempted murder", as no such crime exists. Instead, this court found Appellant guilty of Criminal Conspiracy. To prove conspiracy, the Commonwealth must show an (1) intent to commit or aid in an unlawful act, (2) agreement with a co-conspirator, and (3) overt act in furtherance of the conspiracy.[6] Furthermore, a conspiracy may be inferred through the Commonwealth showing a relationship, conduct, or circumstances of the parties.[7]

In this case, the conspiracy applied to murder, not attempted murder. This court was convinced beyond a reasonable doubt that Appellant was involved in a crime spree that included robbing random individuals on the street and ended in the shooting of Tevin Adams. Cory Thompson, who knew Appellant prior to this incident, testified that Appellant was in the vehicle

---

[1] Commonwealth v. Little, 879 A.2d 293, 297 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1057 (Pa. 2005).
[2] Commonwealth v. Adams, 882 A.2d 496, 498-99 (Pa. Super. 2005).
[3] Commonwealth v. Montini, 712 A.2d 761, 767-68 (Pa. Super. 1998) *quoting* Commonwealth v. Moore, 648 A.2d 331, 333 (Pa. Super. 1994), *appeal denied*, 655 A.2d 512 (Pa. 1995)).
[4] Commonwealth v. Adams, 882 A.2d at 499 (quoting Commonwealth v. Burns, 765 A.2d 1144, 1148 (Pa. Super. 2000), *appeal denied*, 782 A.2d 542 (Pa. 2001)).
[5] Commonwealth v. Cassidy, 668 A.2d 1143, 1144 (Pa. Super. 1995.)
[6] Commonwealth v. Spotz, 756 A.2d 1139 (Pa. 2000).
[7] Commonwealth v. Gibson, 668 A.2d 552 (Pa. Super. Ct. 1995).

5

and part of the crime spree that occurred. Mr. Adams later identified a photo of Appellant and said he had been one of the shooters. This court was not convinced beyond a reasonable doubt that Appellant was himself the shooter, and therefore found him not guilty of attempted murder. However, this court has no doubt that Appellant had the intent to commit an unlawful act and agreed with other men, including Samuel Wallace and possibly Cory Thompson, to commit overt acts in furtherance of their conspiracy. Appellant was involved in a conspiracy that culminated in Mr. Adams being shot. Therefore, Appellant is guilty of criminal conspiracy. This court, as fact finder, ruled on the credibility of all witnesses and was convinced beyond a reasonable doubt that Appellant was involved in such a conspiracy. There is nothing in the record to disturb that finding and accordingly, Appellant's claims should be denied.

In his 1925(b) statement, Appellant further argues that because Mr. Adams' injuries were not life threatening and he no longer suffers the effects of those injuries, there was no specific intent to kill and therefore there can be no conspiracy to commit murder. This argument holds absolutely no weight and is completely illogical. Essentially, appellant is arguing that because the shooter did not have good aim, there was no attempt to murder Mr. Adams. Appellant seriously alleges that shooting six rounds at a fleeing individual does not indicate a specific intent to kill. This court wholeheartedly disagrees and cannot think of anything more evident of an intent to kill than repeatedly shooting at someone on the street as they run away. Even if Mr. Adams had not been hit by any bullets, there is still clear evidence of an intent to commit murder by the co-conspirators. This court refuses to reward Appellant because he and his co-conspirators were not very good shots. There is nothing in the record to indicate that the men were aiming at non vital organs. Instead they were shooting wildly at Mr. Adams as he ran away from their attempt to rob him. It is only through sheer luck that they did not kill Mr. Adams. Appellant's

6

counsel previously made this argument at sentencing and it was properly denied by this court.[8] It should not be given any credence here. There is nothing in the record to support Appellant's claims and accordingly they should be denied.

- **Excessive Sentence**

Appellant next argues that this court abused its discretion and rendered an excessive sentence. At sentencing, all parties agreed that Appellant had a prior record score of one and an offense gravity score of thirteen. That made the guideline range 66 to 84 months plus or minus twelve. However, since a firearm was used in commission of this crime, the deadly weapon enhancement was applied, making the guidelines 78 to 96 months plus or minus twelve.[9] Accordingly, Appellant's sentence of eight and half (102 months) to seventeen years incarceration is a legal sentence within the aggravated range of the guidelines. In his 1925(b) statement, Appellant argues that his guideline range was 75 to 93 months. Even if that were the range, this court would still be allowed to deviate within twelve months and go as high as 105 without going beyond the guideline range. Even if this new range were correct, Appellant's sentence is still legal and within the guidelines. Accordingly, Appellant's sentence should not be altered and this court's determination should remain undisturbed.


## V.    CONCLUSION

For the above stated reasons the judgment and sentence of this court should be upheld and Appellant's claims should be denied.

Coleman, R.

---

[8] Notes of Testimony from 2/11/14 at 2-4.
[9] Id. at 4-7.

7